Thank you. So as we shift gears to the 1746-2034 appeal, we now encounter the concept of roadload and set point. The parties did have a fair amount of exchange with respect to these issues in the prior case. The prior appeal will be argued in December, so let me just retrench just a bit. The primary issue here is whether or not the prior art can show a system that uses a concept called roadload as a control input to arbitrate between modes. The Court has read all this material. You are now familiar with the fact that a hybrid has multiple modes. It has an electric mode. It has an engine mode. I don't think you need to spend a lot of time on the set point issue because that's in December cases that's going to be decided in the December cases one way or the other, and this panel is going to be bound by that. You can address it if you want to, but it seems as though that's out of our hands. Well, I'm happy. I really have no choice but to rely on the decision of the December cases, and I think that's right. But it's important here because one of the major failings in this appeal is the failing of the Board and Ford to show any place in the prior art where roadload is compared to any kind of a set point. So I'd be happy with the construction of set point. Obviously, again, I won't have much choice, but it's important to realize that one of the failings here in the prior art is that they need to point to a control algorithm. They need to show the engine is being turned on when a roadload set point is encountered, and that they simply haven't been able to do, whether it's done through claim construction or in the context of the claims, which was the locus of the debate we had in December. They must show it in order to achieve a prima facie case of obviousness, and they simply haven't done it in this case. So what is the evidence that they point to? Well, they point to the Severinsky 970 patent, Dr. Severinsky's earlier work. Time and again, we have shown that that is a speed-based system. The algorithms that are disclosed, the flow charts, to the extent they're discussed, all of our references to torque in Severinsky. So, Your Honor, one of the problems we have in this case is that there are very few concepts that exist in automotive technology. There is speed, there is torque, there is power, and variations thereon, but that's pretty much it. Just because there is mention of a term that is called torque in the Severinsky 970 patent doesn't mean that it's being used as a control input to control the system. So it's very critical, if you think about the figure nine flow charts that are in the 634 patent, they make it very clear that road load is the input to the control scheme. It is the absolute input. There are mentions of torque, and Your Honor may be thinking of, for example, column 17 of the 970 patent. I'm trying to find which appendix I marked. I can work with any of them. I have the same problem. Okay. I'm in the 1411 appendix. Okay. So it is a fact that there are mentions of torque here and there, and in particular there is an aspirational statement in the 970 patent about operating the engine between 60 and 90 percent of MTO. And if I can comment just briefly on what MTO is. MTO is a rating for the engine. It's like if you're going to the engine store and you're looking for a new engine, you would pick one based on its MTO because you want a size engine, a capability of a particular engine. It is a metric. The fact that it is phrased as maximum torque output is almost coincidental. It is simply a metric. It talks about the way the engine works, the size of the engine, that's what it means. It doesn't refer to a particular operation of the engine. It is simply a number that is chosen. So what Ford has done in this case is they look at the 60 to 90 disclosure of efficiency. The 970 reference talks about that being a sweet spot for the engine. That is true. And they say, aha, look, it's phrased in terms of torque. But, Your Honors, that says nothing. It says nothing about using the road load, which is a different torque metric, a different concept as the input to arbitrate between these modes. So even if Ford were right, even if the aspirational statement would somehow get converted into some magic algorithm, it's the wrong input. They're not evaluating road load. They're looking at the engine and where its operation is. And so we've gotten into this debate in this appeal about whether or not road load is an input or an output. And Ford, the board took the position and then Ford... ...is using road load or torque to determine modes of operation. And the board adopted or credited that testimony, right? But it contains a fundamental mistake. And so what it is is that Ford is saying you look at the output of the engine, the discussion in the 970 of the output of the engine, and that is road load. They've equated those two things. And that is demonstrably untrue. And I can show you that if we look at figure 7 of the 634 patent, which is reproduced in our brief at page 47. And when we look at figure 7... Does that happen to be the same figure as in the 097? Yes. Yes, Your Honor. It's figure 7 all throughout. The reason why I was pointing to my blue brief is that we color-coded it a bit, but I can do it. I can do it in words. What we'll see in figure 7, and particularly the middle figure 7A, I suppose... Which page is this? This is 47 of your blue brief? 44, Your Honor. 44. I'm sorry. Did I say 47? No. And what we see is that there are curves represented here. And there are separate curves for road load and for the engine's output. The road load is color-coded in black. The engine output is color-coded in red. They are not the same quantity, nor could they be. Because recall that you pick the componentry used to drive the system based on the road load. That componentry includes an electric motor. It's not simply an engine. So the output of the engine cannot, cannot be the road load metric used as the control input. It simply cannot. Are you distinguishing between the torque available from the engine and the torque required by the road load? Correct. Correct. Absolutely. And do you agree that Severinsky shows calibrating the set point to measure the available torque from the engine? That's the Column 17 disclosure, and that has to do with charging the battery, Your Honor. It's a completely different... The answer is no. You don't accept it. I don't agree with that. The answer is no. What Dr. Severinsky did in that Column 17 passage is to say, I know that I need to charge the battery now and then. And so what I'll do is I will decide whether or not I'm going to overload the engine by turning on the battery charging mechanism. So if we look precisely at the language that's used, you can see that worn out. I apologize. So the Column 17 passage explicitly makes reference to the fact that this is for the And that was acknowledged by Ford's expert. It was admitted that, in fact, this was part of the battery charging limitation. It's important. A couple of things about Column 17 I'd like to point out. It talks about power. It talks about dividing the power of the engine between these elements, and that's an accurate statement. It talks about deciding whether or not the load that the generator will present to the engine is permissible or not. It talks about the duty cycle. It talks about the frequency. It talks about how much power the generator is going to be permitted to take from the engine without overloading it. That's all it says. It never says we're going to calculate road load. It never says we're going to use road load to decide whether to start the engine. Obviously, the engine has to be on in this context, or it would be impossible, impossible for you to use it to generate additional power. It simply is, it's a reference to torque. That is true in some sense. But given its fairest reading, what this is talking about is simply deciding whether or not there is excess power available from the engine to charge the battery. It's an important aspect, but it has nothing to do with the claims in this case. And at the bottom of Column 20, it will be appreciated language that, according to the Convention, the internal combustion engine is run only in the near vicinity of its most efficient operational point, that is, so that it produces 60 to 90 percent of its maximum torque whenever operated. Your point is that 60 to 90 percent really may have nothing to do with the torque needed to propel the vehicle. Absolutely. Absolutely. Road load. Road load. That is an aspirational statement, one all automotive engineers share. We should operate our engines in their efficient region. It's not a surprising disclosure. But doesn't this at least suggest that the torque generated by the engine is affecting the operation of the vehicle and trying to keep it within this 60 to 90 percent range? I mean, I understand your argument that the torque referred to here is not road load, but you were arguing also that the Severinsky patent doesn't talk about engine torque capability as being a relevant consideration in terms of operating mode. Well, I think what we said is it's not used to arbitrate between the operating modes. So it's always… It suggests that it is, doesn't it? Well, it doesn't in this sense, Your Honor. This is aspirational. This says this is what we want to do. It doesn't tell you how to do it. And so the rest of the 970 disclosure over and over and over again says you should do this based on speed. That when the speed of the vehicle exceeds 30 miles an hour, you start the engine. This talks about torque. It talks about torque, but it doesn't tell you how to do this. It says operating the engine in its sweet spot is a good thing. And it does that, admittedly, in terms of the MTO, because that is a rating that is used for these engines. But it doesn't say how you're going to accomplish that. And this patent is all about accomplishing it. It's about the method, the control method, that's used to drive the engine into that region. I'd quickly point out that if we look at some of the claims that are at issue here, this 60 to 90 percent business never appears. It's not 60 to 90 percent. But it doesn't make any difference when you send the claims, does it? Well, it does in this sense. What Ford says is, aha, this shows that Dr. Severinsky was controlling for this parameter, when in fact he wasn't. When he wanted to control for this parameter, he named it and it turned out to be a completely different value. So it at least is supportive of the notion that this is aspirational. We have to read the 970 patent for what it actually discloses. And what it actually discloses is using a speed-based system to accomplish the sweet spot that it talks about here at the bottom of column 20. Okay, you're again into your rebuttal time. Do you want to save the rest of it? Thank you. Mr. Moore. Thank you, Andrew. I'd like to start with the point, the first question you asked my brother, is that Ford's expert here did testify, the board did credit, that the Severinsky patent discloses comparing torque to a threshold set point and satisfying these limitations. And that express disclosure in Severinsky, with Ford's testimony, is substantial evidence to support the board here. Which is the specific express disclosure that you want to rely on? There's four express disclosures. First is the one we've been talking about, column 20, lines 63 through 67, where it talks about run the engine only in its most efficient range and that the example it gives is 60% to 90% of maximum torque output. And it's talking about running the engine only at that time. So that does talk about how to operate the engine. If it's below 60%, you're going to... Can I just ask about that and maybe I'm confused, though the confusion seems to me to have something to do with some variation in the language that the 097 and the spec, and all of them use in saying what road load is. Sometimes there is this word desired in it and sometimes just the amount needed to propel the vehicle. Suppose there's nothing about desire, just the amount needed to propel the vehicle, the amount of torque. Why does that have anything to do with saying turn the engine on, an engine that gives you 60% to 90%, even if you only need 10%? 10% would be the road load, but you're doing it, you're getting in the 60-90% range. Why does one have anything to do with the other? Well, because the whole control strategy is set up that how you interpret this is you press your accelerator and that determines how much torque you require from the engine. And the board can... Depending on other conditions. No, you press your accelerator, the car has no idea of the other conditions. There's no sensors of the terrain, there's no sensors of hill. The only thing the car has to go by is how much you press that pedal. That's the input, the accelerator, pedal, and brake. If you look at the inputs to the controller and the figures, it's the operator commands. There's no sensors of wind resistance or other conditions in the car. It's how much torque you want from that accelerator pedal. And so based on how much torque when you press that, it then compares that amount to the sweet spot of the engine, 60% to 90% of maximum torque output. If the amount of torque you've requested from the accelerator is below that lower threshold, use the motor to run the car. If the amount of torque you requested is between 60% and 90%, yeah, that's an example they give in the spec, then you run the engine. If you're above the 90% of maximum torque output, you run the engine and motor. And so that's how the hybrid strategy of 970 and in the 097 and the 634 patents issue in this appeal. So what is the definition of road load that everybody seems to be using here? The torque required to propel the vehicle. Okay, so why does the torque required to propel the vehicle automatically correspond to what you're doing with the pedal? Because the patents teach that the accelerator pedal position is the torque required to propel the vehicle. That's the input to the controller to tell the controller to make a decision based on that input. You know, one of the things I spent some time, I guess, trying to figure out is whether the patent ever taught how road load was actually discovered, calculated, measured, monitored. And I was having some trouble with that. And in some of the many, many columns in which the patent distinguishes all kinds of prior art, like a frank prior art, I was getting the message that actually the pedal is not equivalent to the road load because some of the distinctions are being made on that basis. That's from the briefing, not from the patent. No, no, it is from the patent. This is an issue that's already an issue. This whole issue of road load compared to a set point is from the December appeals. But nowhere in the PACE patents do they ever disclose how road load is calculated. But you were standing here saying it's just the brake pedal position. Well, because what they tried to do in the December appeals is they argued that the accelerator pedal position alone couldn't be the road load. But that's what the patent discloses, and that was the issue in the December appeal. All they disclosed in the patent, they don't disclose how it's calculated other than pedal position. Let me just try one more time to indicate why I'm focused on this because it has to do with how I understand and read this column 20. This column 20 point says, turn on the engine only when, only if, get my glasses, in the near vicinity of its most efficient operational point, that point being defined in terms of how much torque it's going to actually be providing. 60 to 90 percent of the maximum. Why does the amount of torque that the engine is going to be providing correspond to the torque that is the torque required to propel the vehicle? Maybe you only require 10 percent. No, because there's no difference between the two. How much torque is required to propel a vehicle is how much the driver presses the accelerator pedal. There is no other input to it other than brake, whether you're trying to increase the speed or acceleration of the car or decrease the speed or acceleration of the car. How much torque is required? If my car is sitting next to a wall and I slam that accelerator, I don't need a lot of torque, but my engine is going to give it to me anyways because the only input it needs to determine how much torque is required. What you just said, I guess, is what is confusing me. If it's going to give you a lot more than you need, then it's just giving you more than road load. No, it's just giving me what I ask for. Road load keeps getting defined as the torque required to propel the vehicle, not I want 17 times that amount. No, okay. The torque required to propel the vehicle is how much torque the driver has asked for by pressing the accelerator. So that's why I kept going back to the ways in which there's different language being used to define this road load. Some of it has a word like desired in it, and some of it is just needed to propel. Those seem to me like different things and may be importantly different for purposes of reading this. They're not. The only torque required to propel the vehicle is how much the torque is asked for through the accelerator position. There's no other disclosure of how to calculate. In fact, they admitted this repeatedly in the December arguments. Well, one looks at claim 161. It describes determining instantaneous road load required to propel a hybrid vehicle responsive to an operator command. Isn't the operator determining how much torque to ask for the engine based on the operator's determination that the vehicle is either moving or not moving at the time the operator wants it to move? Yes. So the operator takes into consideration external factors. That's how road load is determined by the operator who says, I need to push the pedal down to move it at the speed that I want to go. Correct. And that leads to two of the other reasons the 970 Severinsky patent discloses road load compared to a set point. The hill climbing mode is one. If I'm pressing my pedal 30% of the way and I'm going 30 miles an hour on a flat surface, but I come to a hill, if I come to that hill, if I keep that pedal pressed the same amount so I'm requiring the same amount of torque, my car is going to slow down significantly at that hill. But anybody who's driven a car knows to keep that speed up the hill, I have to press the gas pedal further. So there's no determination of road load independent of the operator's perception of what's necessary to move the vehicle forward. Correct. And so that's why if I come to a hill in my situation where I press the pedal, I'm going 30 miles an hour, and I press that pedal further to go up the hill, my speed doesn't change. I can't use speed as my determinant. I need more torque from my engine to maintain that speed going up the hill, but I can't use speed as the determining factor. I have to use torque required to propel the vehicle, and that's indicated by the driver further pressing the accelerator. And, in fact, the two patents at issue in this case admit this. The 634 and 097 patents, in the 634 patent it's a column 25, line 11 through 24, and the same statement is in the 097 because they're continuations. The patents at issue in this case admit that the Prior Art Severensky patent uses torque to determine whether to use the motor or the engine. The 970 patent states that the internal combustion engine operates only at relatively high torque output levels, and it says when the vehicle operating conditions require torque of this approximate magnitude, the engine is used to propel the vehicle. Actual torque as opposed to desired torque. Well, the torque required to propel the vehicle, how much you press that accelerator pedal. So what this is admitting in the 634 and 097 patents when they're describing the Prior Art, and this is a binding admission, and this was relied on by the board as well, I believe, that when these admissions were made, I'm not sure the board wrote this, but these admissions are made stating that the 970 patent uses torque to determine whether to run the engine or whether to run the wheels. So you've got for evidence of this, you've got the statement in column 20, lines 63 through 67. You've got the statement in column 7, lines 8 through 6. You've got the admissions from the 970 patent, or from the 634 and the 097 patents. You've got the hill climbing mode in figure 6, and you've got all of Ford's expert testimony on this, which was expressly credited by the board. And this is substantial evidence to support the board's decision. But just making sure Ford's position is clear on the record, this issue was in the December appeals as well. This issue was discussed in the December appeals. It was the same issue. That's where the admissions about how road loads calculated not being in the record was admitted by Pace. Okay, anything more? There was one statement I just want to address quickly, and it was the issue of battery charging in claim 18. In claim 18 there was the issue of whether the statement in column 17, lines 1 through 15, discloses the road load required to propel the vehicle. But what that statement in column 17 states, column 17, lines 1 through 15, of the 970 patent, is there it's talking about battery charging. And it's talking about even when I'm charging the battery, I want to run the engine efficiently. So I might be in heavy traffic and my car's not going anywhere, I'm in stop and start traffic, so I don't need a lot of road load, I'm using the motor, I'm not using the engine. But my battery charge gets low. And what this teaches is that even under those conditions where my road load requirements from stop and start traffic are low, and my road load's below a set point, I'm going to still run the engine at its efficient range. And what it states is when I'm charging the battery, the microprocessor 48 may determine the load to be provided to the engine, so the engine can be operated at its most fuel-efficient operating range. And so I'm pointing that out, so it's always going to run the engine at its most fuel-efficient operating range, whether it's driving the vehicle, like it talks about in column 20, lines 63 through 67, or whether it's charging the battery. And with that, I have no further comments. Okay, thank you. Mr. Cordell. Thank you, Your Honor. I'd like to begin with a discussion about road load and pedal position. We absolutely positively have never suggested, admitted, intimated that the pedal position and road load are one and the same. It is true that pedal position is an input to the system, but it's... There's no independent measure of the torque required to propel the vehicle. So the way it's done in real life is that they create engine maps that are based not only on pedal position, but on the other operating conditions of the vehicle, how fast it's going, whether it's turning. There are many forces that act on a vehicle at the same time. Importantly, the pedal position is a big input. A pedal position of 30 percent going uphill gives you a decidedly different... Where does this patent refer to determining the road load required to propel a vehicle, other than the operator making such a determination? So it doesn't even talk about the operator making that determination. I know, but that would be inherent in it. But where does it talk about how you determine road load? We had a vigorous discussion before the Board about whether... No, no, we... So the answer is it's not there. It's not there. And the reason why it's not there is because it's a well-known metric in automotive parlance. I mean, road load is something that automotive engineers understand. There was no need to define it, and they've never created an issue. No defendant in any of these cases has ever created an issue about whether it was well-known. The reality is... Well-known, people know what road load is. But my question was, what does the patent say about how you determine road load? It does not. It does not say anything because, again, it is well-known. And it's not... Well-known? And what is well-known about how to determine road load? It's, again, automotive engineers do it for all sorts of purposes, to size components, to design the vehicle. It's a metric that they understand very well. But it's not just pedal position. It's got to be the first, second, and third derivatives of pedal position. It's the speed and first, second derivatives of speed. It's the other forces acting on the car. So it's absolutely not correct to suggest that we've suggested that it's pedal position of all. And if I can make one more argument, Your Honor. My brother talked about the statement at Claim 25 with respect to characterization of the 970 patent by the later patent. That needs to be read very, very carefully. But the first thing I would say is that the Board did not rely on that statement. They did not rely on the later characterization of the earlier or prior art. And under tyranny, it simply can't inform no part of the decision. Okay, I think we're out of time here.